In re DEFENDER DRUG STORES, INC., an Arizona corporation, Debtor.

In re SUPERX OF ARIZONA, ALABAMA & GEORGIA CORPORATION, a Delaware corporation, Debtor.

In re MEDICARE–GLASER CORPORATION, a Missouri corporation, Debtor.

The KROGER CO. and SuperX Drugs Corporation, Appellants,

v.

SUPERX OF ARIZONA, ALABAMA AND GEORGIA CORPORATION, Appellee (Two Cases).

BAP Nos. AZ 90–1751–AsPV, AZ 90–1774–AsPV.

Bankruptcy Nos. 90–4885–PHX–RGM to 90–4887–PHX–RGM.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 25, 1991.

Decided May 7, 1991.

H. Sullivan Bunch, Phoenix, Ariz., for appellants.

Anna Durand, Phoenix, Ariz., for appellees.

Before ASHLAND, PERRIS and VOLINN, Bankruptcy Judges.

## OPINION

ASHLAND, Bankruptcy Judge:

The Kroger Co. and SuperX Drugs Corporation appeal from the court's determination of the debtor's obligations under 11 U.S.C. § 365(d)(3) prior to formal assumption or rejection of the debtor's nonresidential leases. We dismiss a portion of the appeal as moot and the remainder as premature.

### FACTS

Appellant SuperX Drugs Corporation (SDC) is a wholly owned subsidiary of appellant The Kroger Co. (Kroger) and of Wolken Enterprises, Inc. (Wolken). On March 1, 1987 SDC entered into a Purchase Agreement with Wolken. Under the Purchase Agreement, among other asset transfers, SDC assigned to Wolken its rights under leases for then operating stores located in Arizona, Alabama, and Georgia. In addition to the fact that SDC is assignor on all of the leases, Kroger stands as a guarantor on many of the leases for the drug stores operated prepetition in Arizona.

After the Purchase Agreement was entered into, Wolken apparently changed its name to SuperX of Arizona, Alabama, and Georgia (SuperX). On May 11, 1990 SuperX filed its Chapter 11 petition. Prior to the petition date, SuperX had apparently closed or determined to close several of its existing drug store operations. Contemporaneously with SuperX's filing, Kroger and

SDC began receiving notices of default under the assigned leases.

On May 30, 1990 Kroger and SDC filed a motion to require assumption or rejection of SuperX's leases. The motion noted that due to SuperX's defaults on several of its leases, Kroger and SDC were·exposed to potential liability as assignor or guarantor of the leases. To date, Kroger and SDC had received notification of potential liability based on known, prepetition defaults in the aggregate sum of $65,167.37. Based on their current knowledge of the Arizona store lease obligations only, their exposure for payment of accruing postpetition net rent (exclusive of additional charges such as common area maintenance, insurance, and taxes) was at least $102,869.42 per month. SuperX had expressed an intention to pay June rent, but apparently did not intend to pay May rent.

By virtue of their status as parties secondarily liable under the assigned leases, Kroger and SDC sought, among other relief, the following: that SuperX be required to strictly comply with § 365(d)(4)[1] and assume the assigned leases, if at all, by July 10, 1990, 60 days after the petition date; that SuperX be required to comply with § 365(d)(3)[2] and pay current all postpetition lease expenses, including those prorated for the month of May; that SuperX be required to continue performing its obligations under each lease through and including the date on which the court permitted SuperX formally to assume or reject that lease. A response to the motion was apparently filed by SuperX, however such response is not included in the excerpts of record filed by the appellants nor is it mentioned in the appellate briefs.

A hearing on Kroger and SDC's motion was held on June 19, 1990. At that hearing, SuperX noted that it planned to file a motion to extend the time within which to assume or reject its leases within the following week. SuperX noted that although it agreed that it was required to comply with its obligations under § 365(d)(3), it was not entirely clear as to what those obligations entailed. For example, to what extent do prepetition obligations that fall due postpetition fall within the meaning of § 365(d)(3)? Similarly, does § 365(d)(3) require that rent for the postpetition period of May 12, 1990 to May 31, 1990 be paid as a § 365(d)(3) obligation?

At the hearing, the judge stated that he would take Kroger and SDC's motion under advisement. Kroger and SDC were allowed time to file a reply to SuperX's response. However, the judge did note that in a case as substantial as SuperX's, he would think a debtor should be given the initial 60 days to determine whether to assume or reject its leases, and maybe more, depending on the facts and circumstances of the case. In addition, the judge noted that an order stating that May rent was due on the day of the hearing would seem disproportionate to the rights of the debtor.

On July 2, 1990 Kroger and SDC filed their reply in support of their motion. They noted that as of that date, they had

---

**1.** Section 365(d)(4) of 11 U.S.C. provides the following:

(d)(4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

**2.** Section 365(d)(3) of 11 U.S.C. provides the following:

(d)(3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

not been served with the motion for an extension of time that SuperX had indicated it had planned to file. Kroger and SDC reiterated their request that SuperX be required to pay timely all postpetition obligations and that the court set a date by which SuperX must assume or reject its leases.

Although it apparently had not been served upon Kroger and SDC by July 2, 1990, on June 29, 1990 SuperX filed its motion to extend the time within which to assume or reject all outstanding nonresidential real property leases and cure prepetition defaults, and to determine SuperX's obligations under § 365(d)(3). SuperX requested a 120–day extension of the initial 60–day period allowed in § 365(d)(4). In addition, SuperX expressed a willingness to comply with § 365(d)(3) which requires that until a lease is assumed or rejected, the trustee "shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property,...." However since the exact meaning of that provision had never been fully explicated, SuperX sought a determination of what, exactly, the trustee or the debtor in possession in this case, must do in order to meet the § 365(d)(3) obligations.

The dilemma facing SuperX was determining what obligations of the debtor had arisen "from and after the order for relief." SuperX argued that no obligation could have arisen from and after the petition date unless that obligation became due and payable after the petition date of May 11, 1990. Therefore rent which was due on May 1, 1990, even though it covered the entire month of May including the postpetition period of May 12, 1990 to May 31, 1990, would not be considered a § 365(d)(3) obligation since it did not become due and payable after May 11, 1990.

On the other hand, SuperX argued that a determination that *all* of its obligations which became due and payable after May 11, 1990 were required to be paid as § 365(d)(3) obligations would be unfair to its other creditors. For example, certain of its obligations, such as percentage rent payments, common area maintenance expenses and property tax assessments, may become due and payable after May 11, 1990, but may entirely relate to prepetition periods. SuperX argued that it would be unfair to its other creditors to make any payments that related to prepetition periods.

As there was no case law directly on point, SuperX proposed a two-part test for determining which obligations under a lease arose "from and after the order for relief" and were thus obligations to be paid pursuant to § 365(d)(3):

  (1) the obligation became due and payable after the date of the order for relief (May 11, 1990); and
  (2) the obligation relates to operations under the lease after the date of the order for relief (May 11, 1990).

In situations in which SuperX received bills that related to a period that was partly prior to and partly after the petition date, SuperX proposed prorating the amount of the obligation according to how much of the period covered by the bill related to the time after the petition date.

On July 20, 1990 Kroger and SDC filed an opposition to SuperX's lease extension motion. Kroger and SDC opposed the 120–day extension. In addition, Kroger and SDC opposed SuperX's proposed test for determining when obligations must be paid under § 365(d)(3). Kroger and SDC argued that SuperX's proposed apportioning would work a fundamental unfairness on the affected parties and would almost certainly lead to further litigation. They argued that the proposed apportioning was untenable, unfair, and bore no rational relationship to the charges due under the lease. Furthermore, application of SuperX's formula would be a complicated and costly task. Kroger and SDC argued that the court should simply require SuperX to pay all lease obligations which became due and payable postpetition.

An order denying Kroger and SDC's motion to require assumption or rejection of SuperX's leases within 60 days was signed and filed on July 23, 1990. The court concluded that a determination that SuperX

must strictly comply with the 60–day deadline should not be decided at that time, but should be reserved for the hearing on the motion to extend the time to assume or reject the leases.

The initial hearing on SuperX's extension and § 365(d)(3) motion was held on July 26, 1990. It appears that the matter before the court on July 26, 1990 related only to leases as to which objections or responses were filed by July 20, 1990, and also as to which people made appearances at the previous hearing on the matter. In response to comments from certain landlords that under § 365(d)(3) SuperX should be required to pay rent for the period of May 12, 1990 to May 31, 1990, SuperX argued that since the May rent payment was not due postpetition, it was not a "current" obligation; and was therefore not required to be paid under § 365(d)(3). Kroger and SDC seemed to agree with SuperX that § 365(d)(3) would not require SuperX to pay rent for the postpetition period of May 12, 1990 to May 31, 1990 since the obligation to pay the May rent did not arise postpetition. However, Kroger and SDC strongly disagreed with SuperX's position that certain lease obligations which did become due postpetition, such as percentage rent, were not required to be paid under § 365(d)(3) if they did not relate to postpetition operations. After hearing testimony from the senior vice-president of SuperX, the court took the matters presented under advisement.

Later that day, the court signed what was characterized as an Under Advisement Ruling. The court found that SuperX had shown sufficient cause to extend the time for assuming or rejecting the leases. In ruling on the rent issue and the amount of postpetition rents owed by SuperX, the court found and concluded:

> ... that the percentage rents that were earned by the landlords pre-petition, and only coming due post-petition should not be included in the § 365(d)(3) payments owed during the administration and the following three part test shall be used for determining what obligations fit the § 365(d)(3) criteria:

> (1) The obligation became due and payable after the date of the order for relief; and

> (2) the obligation relates to operations under the lease after the date of the order for relief.

> (3) Percentage rents owed are to be split by the date of the petition and paid pro-rata.

The ruling then provided that:

> IT IS ORDERED, that the debtors' motion to extended [sic] the time to assume and reject non-residential real property leases, heard this date, is granted and the debtors shall have an additional period of time, up to and including Monday November 12, 1990, to assume or reject the unexpired leases.

> IT IS FURTHER ORDERED that the post-petition percentage rents coming due on the leases considered at this hearing shall be calculated for purposes of the § 365(d)(3) payments as outlined above and adopted herein.

On July 31, 1990 another hearing on SuperX's extension motion was held. This hearing apparently was to concern those leases where objections or responses were filed by the bar date of July 27, 1990. Landlords on at least two of those leases apparently argued, as had landlords in the prior hearing, that SuperX should be required under § 365(d)(3) to pay rent for the postpetition period of May 12, 1990 to May 31, 1990. SuperX argued that such a requirement would be inconsistent with the court's prior ruling. Certain landlords, on the other hand, argued that the court's prior order only dealt with percentage rent and did not really deal with base rent. The judge noted that he suggested in this prior order that base rents would also be prorated. SuperX disagreed and argued that under the prior order, no May rent would be required to be paid under § 365(d)(3) as it did not become due postpetition. Due to the apparent confusion, the judge noted that he would revisit the issue of rent for the period of May 12, 1990 to May 31, 1990. However, the judge specifically noted that he was not revisiting anything but that one issue.

At the end of the hearing the court granted SuperX's extension motion insofar as it related to leases not covered in the July 26, 1990 order. As to the rent issue, the judge noted that he would "revisit the Minute Entry of July 26 and see whether it should be approved, reapproved or ratified or whether it should be amended."

Later that day, the court signed what was again characterized as an Under Advisement Ruling. The ruling provided:

The court having reserved ruling [on] the question of whether the twenty day administrative rent proration should be paid as administrative rent at this time and consideration of the oral arguments and statements, it is ordered that the debtor may make those payments upon the assumption of the leases and that any rejections shall be deemed administrative claims for that period. It is so ordered.

It is further ordered that the debtors [sic] attorney lodge a formal written order consistent with the rulings in this minute entry forthwith.

An order which incorporated both the July 26, 1990 order and the July 31, 1990 order was signed and filed on August 9, 1990.

On August 3, 1990 Kroger and SDC filed a notice of appeal of the minute entry order dated July 26, 1990. On August 10, 1990 Kroger and SDC filed a notice of appeal of the minute entry order dated July 31, 1990. Both orders were entered on the docket prior to the filing of the notices of appeal. No notice of appeal was filed from the August 9, 1990 order. It is unclear from the record when the August 9, 1990 order was entered on the docket but we will presume that it was in fact entered on the docket at some point thereafter.

## ISSUES

Whether the failure of Kroger and SDC to file a notice of appeal from the August 9, 1990 order deprives this panel of jurisdiction to hear this appeal.

If the panel has jurisdiction to hear this appeal, whether subsequent events have rendered a portion of the appeal moot and the remainder of the appeal premature.

## DISCUSSION

### I. Appellate Jurisdiction.

SuperX argues that the appeal should be dismissed for lack of jurisdiction because Kroger and SDC have not appealed from a final judgment. SuperX contends that the two minute entry orders were not final orders and that notices of appeal from those "orders" were ineffective. As Kroger and SDC did not file a notice of appeal from the August 9, 1990 order, SuperX argues that the panel has no jurisdiction to hear this appeal.

SuperX relies on *In re Sweet Transfer & Storage, Inc.*, 896 F.2d 1189 (9th Cir.1990) in support of its argument. In *Sweet Transfer* an oral decision was given by the bankruptcy court. Motions for reconsideration were filed and were denied on the same day that the appellants filed their first notice of appeal. The order denying reconsideration and the judgment were signed and filed four days later. Appellants filed an amended notice of appeal the day after the order and judgment were filed. However, the order and judgment were not entered until a week after the amended notice of appeal was filed. The appellants did not file a notice of appeal after the order and judgment were entered on the docket. *Sweet Transfer*, 896 F.2d at 1191.

The Ninth Circuit affirmed the BAP's dismissal of the appeal for lack of jurisdiction. The court held that the notice of appeal was untimely. The court's holding was based upon Bankruptcy Rule 8002(b). Rule 8002(b) specifically provides that "a notice of appeal filed before the disposition of any of the above motions [including the motion for reconsideration that was filed by the appellants] shall have no effect; a new notice of appeal must be filed." *Id.* at 1192.

The *Sweet Transfer* court noted that federal courts have held that Bankruptcy Rule 8002(b) should be applied in the same manner as Fed.R.App.P. 4(a)(4) since Rule 8002(b) is adopted from Rule 4(a)(4) and is essentially the same as that rule. *Id. See*

*In re Crystal Sands Properties*, 84 B.R. 665, 667 (9th Cir. BAP 1988). In *Acosta v. Louisiana Dept. of Health and Human Services*, 478 U.S. 251, 254, 106 S.Ct. 2876, 2877, 92 L.Ed.2d 192 (1986) the Supreme Court held that "a notice of appeal is ineffective unless filed after entry of judgment on a Rule 59 motion or any other motions to which the subdivision [Fed.R.App.P. 4(a)(4) ] applies." In so holding, the Court rejected the Ninth Circuit's construction of Rule 4(a)(4) in *Calhoun v. United States*, 647 F.2d 6, 10 (9th Cir.1981). *Acosta*, 478 U.S. at 253, 106 S.Ct. at 2877. Because courts construe Bankruptcy Rule 8002(b) in the same manner as they do Fed.R.App.P. 4(a)(4), the *Sweet Transfer* court concluded that *Acosta* controlled the issue of timeliness in bankruptcy appeals. Since the notice of appeal was not filed after the entry of the order on the motion for reconsideration, the notice of appeal was ineffective and the appeal was dismissed. *Sweet Transfer*, 896 F.2d at 1192.

SuperX's reliance on *Sweet Transfer* is misplaced. Bankruptcy Rule 8002(b), and similarly Fed.R.App.P. 4(a)(4), are not at issue in this case. No Bankruptcy Rule 8002(b) motion was filed. This case is governed by Bankruptcy Rule 8002(a) which provides that "[t]he notice of appeal shall be filed with the clerk within 10 days of the entry of the judgment, order, or decree appealed from." SuperX argues that the Under Advisement Rulings that were signed by the court and filed on July 26, 1990 and July 31, 1990 respectively, were not final judgments, orders, or decrees appealed from. SuperX supports its arguments by the fact that in its minute entry order of July 31, 1990 the court ordered "that the debtors [sic] attorney lodge a formal written order consistent with the rulings in this minute entry forthwith." However, no similar "order" was contained in the July 26, 1990 minute entry order. A review of that order suggests that the court intended it to be the court's final order on the matters at issue. Similarly, a review of the July 31, 1990 transcript suggests that the court considered the July 26, 1990 Under Advisement Ruling to be the court's final ruling on the § 365(d)(3) issues related to payments such as percentage rents.

■ We are not dealing with a situation in which notices of appeal were filed after the court gave an oral ruling but prior to the time a written order was entered on the docket. In the present situation, the court took the matters under advisement at the end of the hearing, and then later in the day issued a written Under Advisement Ruling which encompassed the court's orders on the matters at issue. Notwithstanding the provision in the July 31, 1990 order requesting that SuperX's attorney lodge a formal written order consistent with the court's rulings in the Under Advisement Ruling, for the purposes of filing of notices of appeal, we consider the July 26, 1990 and July 31, 1990 written Under Advisement Rulings the requisite "judgments, orders, or decrees appealed from" under Bankruptcy Rule 8002(a). *See In re Slimick*, 928 F.2d 304, 306–07 (9th Cir. 1990) (when faced with the recurrent problem of which of two documents filed by a court, both arguably pronouncing the court's final order in a matter, was the final order for the purposes of filing a notice of appeal, the court stated that the initial order was final if it contained a complete act of adjudication and clearly evidenced the judge's intention that it be the court's final act in the matter. The court upheld the BAP's dismissal of the appeal as untimely as the appellant had failed to file a notice of appeal from the initial order.).

■ Even if we were to conclude that the notices of appeal filed prior to the entry of the August 9, 1990 order were premature, since we are not dealing with a Bankruptcy Rule 8002(b) or a Fed.R.App.P. 4(a)(4) situation, those notices of appeal would be considered as being filed after the entry of that order and on the date thereof. In a recent Supreme Court case, *FirsTier Mortgage Company v. Investors Mortgage Insurance Company*, —— U.S. ——, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991), the court reversed the Tenth Circuit's dismissal of an appeal. In *FirsTier*, the district court announced from the bench that it intended to

grant summary judgment in favor of the appellee. The appellant filed its notice of appeal after the oral ruling, but before entry of judgment and before the parties had, at the court's request, submitted proposed findings of fact and conclusions of law. The Tenth Circuit dismissed the appeal on the ground that the bench ruling was not a final appealable decision. *Id.* 111 S.Ct. at 651.

The Supreme Court reversed. Before the court was the issue of whether the appellant's notice of appeal was fatally premature. The Court noted that under Fed.R.App.P. 4(a)(2), a notice of appeal "filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof." *FirsTier*, 111 S.Ct. at 651. Fed.R.App.P. 4(a)(2) was intended to codify the general practice of deeming certain premature notices of appeal effective. *Id.* (citing Advisory Committee's Note on Fed.Rule App.Proc. 4(a)(2), 28 U.S.C.App., p. 516.) "The Rule recognizes that, unlike a tardy notice of appeal, certain premature notices do not prejudice the appellee and that the technical defect of prematurity therefore should not be allowed to extinguish an otherwise proper appeal." *Id.* (citations omitted.)

Fed.R.App.P. 4(a)(4) is an exception to the general rule that a notice of appeal filed after the announcement of the order but before its entry in the docket will be deemed timely filed. *See Acosta*, 478 U.S. at 254, 106 S.Ct. at 2877. As long as a motion enumerated under Fed.R.App.P.

4(a)(4) is not filed, Rule 4(a)(4) does not render a premature notice of appeal ineffective. *See FirsTier*, 111 S.Ct. at 653 n. 7. The motions enumerated under Fed.R.App.P. 4(a)(4) are the same as those enumerated under Bankruptcy Rule 8002(b). Although Fed.R.App.P. 4(a)(2) does not at the present time have a specific counterpart in Bankruptcy Rule 8002[3], we conclude that as in Fed.R.App.P. 4(a)(2), as long as a Rule 8002(b) motion is not filed, a premature notice of appeal shall be considered as filed after the entry of the order and on the date thereof. *See In re F.A. Potts & Co.*, 19 B.R. 663, 664 (E.D.Pa. 1982). Therefore, if in fact the notices of appeal from the July 26, 1990 and July 31, 1990 orders were premature, they shall be treated as timely filed after the entry of the August 9, 1990 order. We have jurisdiction to hear this appeal.

II. The assumption of the majority of the leases has rendered one portion of the appeal moot and the rejection of the remaining leases has rendered the remainder of the appeal premature.

Although we have jurisdiction to hear this appeal, certain events which have occurred subsequent to the notices of appeal, which we may take judicial notice of, *see In re Omoto*, 85 B.R. 98, 100 (9th Cir. BAP 1988), have rendered a portion of the appeal moot and the remainder premature. As noted earlier on p. 229, the court granted SuperX's motion to extend the time within which to assume or reject the leases

---

**3.** The proposed amendment to Bankruptcy Rule 8002(a), which was approved by the Judicial Conference of the United States on September 12, 1990 and which will become effective on August 1, 1991 if the United States Supreme Court approves it and if the Congress fails to take any action regarding it, will in essence add Fed.R.App.P. 4(a)(2) to Bankruptcy Rule 8002(a). Proposed Bankruptcy Rule 8002(a) reads as follows:

> *Rule 8002. Time for Filing Notice of Appeal*
> (a) *Ten-Day Period.* The notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from. If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 10 days of the date on which the first notice of appeal

was filed, or within the time otherwise prescribed by this rule, whichever period last expires. *A notice of appeal filed after the announcement of a decision order but before entry of the judgment, order, or decree shall be treated as filed after such entry and on the day thereof.* If a notice of appeal is mistakenly filed with the district court or the bankruptcy appellate panel, the clerk of the district court or the clerk of the bankruptcy appellate panel shall note thereon the date on which it was received and transmit it to the clerk and it shall be deemed filed with the clerk on the date so noted.

*See* Sonderby, *Amendments to the Bankruptcy Rules and to the Official Forms,* Current Developments in Bankruptcy and Reorganization 1991—Volume One 69, 131 (1991).

and gave SuperX until November 12, 1990 to assume or reject the unexpired leases. At oral argument on January 25, 1991, counsel for Kroger and SDC acknowledged that of the relevant 26 leases, 14 had been assumed and 12 had been rejected, leaving no leases under which a decision whether to assume or reject must be made.

In response to questions from the panel, counsel for Kroger and SDC acknowledged that insofar as it related to the leases which had been assumed, the appeal could be moot. We agree. Kroger and SDC's appeal seeks a determination of SuperX's pre-assumption obligations under § 365(d)(3). Once those 14 leases were assumed, any obligations which may have been required to be paid under § 365(d)(3) were presumably paid by SuperX under § 365(b)(1)(A). That subsection requires that prior to assumption, the debtor in possession must cure or provide adequate assurance that the debtor in possession will promptly cure any defaults under the lease. The § 365(d)(3) obligations would have been defaults under the lease cured prior to assumption. The appeal is moot insofar as it relates to the assumed leases.

In addition, the appeal is premature insofar as it relates to the remaining leases which have been rejected. Kroger and SDC's appeal seeks a determination of SuperX's pre-assumption or pre-rejection obligations under § 365(d)(3). As those leases have already been rejected, it is possible that the lessors are no longer entitled to those § 365(d)(3) payments and are instead only entitled to administrative claims under § 503(b)(1)(A). *See In re Orvco, Inc.*, 95 B.R. 724 (9th Cir. BAP 1989). It is up to the court below, to determine in the first instance, what the lessors are entitled to post-rejection. This panel will not issue an advisory opinion on a matter not ruled on by the court below.

## CONCLUSION

This panel had jurisdiction to hear this appeal. However, the assumption or rejection of all of the relevant leases has rendered a portion of the appeal moot and the remainder premature. This appeal is dismissed.