**In re George Alton LENZ, Debtors.**

**Bankruptcy No. 85 B 03314 J.**

United States Bankruptcy Court,
D. Colorado.

Sept. 2, 1988.

See also, Bkrtcy., 80 B.R. 528.

James E. Freemyer, Denver, Colo., for the debtors.

Lawrence B. Leff, and Richard R. Swan, Winzenburg and Leff, Denver, Colo., for Ken–Caryl Ranch Master Ass'n, Inc.

Curt Todd, Haligman and Lottner, Englewood, Colo., for World Sav. and Loan Ass'n and for Association Services, Ltd.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Motion for Administrative Expense filed by Ken–Caryl Ranch Master Association, Inc. ("Ken–Caryl").

On June 14, 1985, the Debtors filed their Chapter 11 petition. Included in their assets was their personal residence in the Ken–Caryl Ranch subdivision. When the Debtors took title to that property, they became bound by the Master Declaration of Covenants, Conditions and Restrictions for the subdivision (Creditors Exhibit 1A). Those covenants are administered and enforced by Ken–Caryl. In order to finance the operations of Ken–Caryl, homeowners are assessed annual fees. Under Section 9.05 of the covenants "The amount of any

delinquent Assessment, whether regular or special, assessed against any property and any late payment charge attributable thereto, plus interest on such assessment and charge at a rate of twelve percent per annum simple interest, and the costs of collecting the same, including reasonable attorneys' fees, shall be both a personal liability of the Owner, enforceable in any court of competent jurisdiction, and a lien upon [the property]."

■ This Court has previously held that such post-petition homeowners' assessments in Chapter 7 cases are post-petition debts which are not discharged by operation of 11 U.S.C. §§ 524 and 727(b), and the Debtors remain personally liable therefor until they divest themselves of title. *In re Horton*, 87 B.R. 650 (Bkrtcy.D.Colo.1987). Judge Clark of this Court, a year later in the case of *In re Gile*, Case No. 86 B 10750 C, *unpub.* March 14, 1988, held exactly the same way even though the Debtors attempted to surrender the property to the mortgage holder. Judge Matheson of this Court similarly held in a Chapter 13 case and further held that the declarations and covenants were not executory contracts which could be rejected by the debtors under 11 U.S.C. § 365. *In re Case*, 91 B.R. 102 (Bkrtcy.D.Colo.1988).

In the case of *In re Rink*, 87 B.R. 653 (Bkrtcy.D.Colo.1987), visiting Judge Merlin Young reaffirmed the holding in the *Horton* case, *supra*, but further refined it (as did Judge Matheson in the *Case* decision, *supra*) by pointing out that upon the filing of a bankruptcy petition, by operation of 11 U.S.C. § 541, the "owner" of the property becomes the bankruptcy estate, and the *estate* is thus liable for post-petition homeowners' assessments until the estate is no longer the "owner". This ownership of the estate could cease at various times under the Bankruptcy Code: (1) when the property is abandoned—§ 554(a) and (b); (2) when a case is dismissed—§ 349(b)(3); (3) when a Chapter 13 plan is confirmed—§ 1328(b); (4) when a Chapter 11 plan is confirmed—§ 1141(b); when a case is closed—§ 554(c); and when the property is exempted by the debtor under § 522(b). Thus, until one of the foregoing events occur, the *estate* is liable for the homeowners' assessments.

Thus, in this Chapter 11 case, because none of the foregoing events have occurred, the *estate* is liable for these assessments because the estate is the owner.

Ken–Caryl has requested that the unpaid assessments through June 1988 ($542.00) be allowed as an administrative expense under § 503(b)(1)(A), and allege that such assessments accrue at the rate of $52.00 per month. In addition, Ken–Caryl seeks late charges of 10 percent per month, a lien filing fee of $40.00, an ownership and encumbrance report fee of $15.00, interest of 10 percent per annum, and attorney's fees of $571.30, for a total of $1,252.20, through June 1988.

■ The lien filing fee and ownership report fee were incurred when Ken–Caryl filed a notice of lien against the Debtors' property on October 19, 1987. This act was in violation of § 362 and is null and void and the Court will not allow these as a § 503 expense. There was no evidence as to the reasonableness or necessity for the $571.30 in attorney's fees, and the Court will likewise not allow these fees as a § 503 expense.

■ The monthly assessments, late charges and interest were properly charged by Ken–Caryl according to the covenants. The question then is whether such charges were actual, necessary costs and expenses of preserving the estate. The Court finds that they were because it is through the assessments that Ken–Caryl carries out its duties under the covenants to operate and maintain the swimming pool, maintain the greenbelt and open space areas of the subdivision, and pay the property tax on the common areas. These activities necessarily confer benefit and value to all of the properties in the subdivision, including the Debtors' property. Thus, Ken–Caryl is entitled to a § 503(b)(1)(A) expense in the sum of $542.00 in assessments, $54.20 in late fees, and interest at 12 percent for 11 months (August 1987 through June 1988) or $65.58, for a total of $661.78.

Debtors have claimed an offset to any amounts due to Ken–Caryl because, they allege, Ken–Caryl has failed to properly execute its duties by failing to enforce the covenants. Debtors produced substantial evidence that Ken–Caryl has not effectively forced other owners to keep their property free of weeds and debris and that although drainage plans must be submitted prior to construction, other owners have been allowed to deviate from those plans, causing storm waters to unnecessarily flood Debtors' property. This evidence was unopposed, and the Court finds Debtors have a valid complaint.

Debtor George Lenz testified that because of Ken–Caryl's dereliction, the value of his property has decreased from $210,000.00 to $170,000.00. But he also admitted that part of this decline was due to general market conditions. The Court finds that the damage to Debtors' property could be no more than the amount of benefit Ken–Caryl failed to provide. The measure of this benefit would be the amount of the monthly assessments. Therefore, the Court finds that Ken–Caryl has damaged Debtors' property in the total sum of $661.78, through June 1988. It is, therefore,

ORDERED that Ken–Caryl Ranch Master Association, Inc. shall be allowed an administrative expense claim under 11 U.S.C. § 503(b)(1)(A) in the total sum of $661.78 to and including June 30, 1988.

FURTHER ORDERED that Debtors are allowed an offset to the administrative claim of Ken–Caryl Ranch Master Association, Inc. in the sum of $661.78 to and including June 30, 1988.

FURTHER ORDERED that the notice of lien filed by Ken–Caryl Ranch Master Association, Inc. against the Debtors' property on October 19, 1987, at Reception No. 87129035 in the Clerk and Recorder's Office in Jefferson County, Colorado, is null and void as being filed in violation of 11 U.S.C. § 362.