**In re Jacob F. BUTCHER a/k/a Jake F. Butcher, Jake Butcher, and J.F.B. Petroleum and Land Co., Inc., Debtor.**

Bankruptcy No. 3–83–01036.

United States Bankruptcy Court,
E.D. Tennessee.

Dec. 6, 1989.

See also, 6th Cir., 848 F.2d 189 (unpublished opinion).

---

Wackeen, Cornett & Googe, P.A., Steven D. Braverman, Ann E. Peterson, Stuart, Fla., for 2001 Sailfish Point Boulevard Condominium Ass'n, Inc.

Bass, Berry & Sims, Wallace W. Dietz, Catherine G. Gray, Nashville, Tenn., for John H. Bailey, III, trustee.

MEMORANDUM ON MOTION OF 2001 SAILFISH POINT BOULEVARD CONDOMINIUM ASSOCIATION TO ALLOW ADMINISTRATIVE EXPENSE CLAIM

RICHARD S. STAIR, Jr., Bankruptcy Judge.

A creditor, 2001 Sailfish Point Boulevard Condominium Association, Inc. (the Association), by a motion filed September 8, 1989, seeks to recover the sum of $31,864.54 as a priority expense of administration under 11 U.S.C.A. § 503(b)(1)(A) (West Supp.1989).[1] The trustee, John H. Bailey, III, filed his objection and response in opposition to the Association's motion on November 13, 1989. A hearing was held November 15, 1989. All facts and documents essential to

---

1. The Association, in its motion, originally asserted a claim in the amount of $44,527.17. It subsequently reduced its claim to $31,864.54.

a resolution of the issues before the court are stipulated.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A) & (B) (West Supp.1989).

I

The Association seeks to recover as an administrative expense maintenance and condominium assessment fees accruing post petition on condominium Units 316 and 413 of 2001 Sailfish Point Boulevard Condominium, in Martin County, Florida.[2] It is undisputed that the debtor's interest in the condominium units became property of the estate under 11 U.S.C.A. § 541(a) (West 1979 & Supp.1989) upon commencement of the debtor's case and remained such until abandoned by the trustee on June 30, 1985.[3]

The Association originally asserted its entitlement to an administrative expense claim through April 30, 1986, the date the condominium units were foreclosed by the holder of the first mortgage deed of trust. However, at the November 15, 1989 hearing, the Association conceded that its claim against the estate was limited to assessments accruing prior to the date the units were abandoned by the trustee.

The Association contends that it paid the maintenance and common charges of the debtor attributable to his ownership of Units 316 and 413 from June 29, 1983, the date of the filing of the involuntary petition, through June 30, 1985, the date the units were abandoned by the trustee.[4] It argues that it is entitled to reimbursement of these expenses as an administrative expense claim under Bankruptcy Code § 503(b)(1)(A).

The "Declaration Of Condominium Of 2001 Sailfish Point Boulevard, A Condominium," which governs the rights and obligations of the Association and owners of condominium units provides in material part:

17. COMMON EXPENSES AND COMMON SURPLUS: Each Unit Owner shall pay his share of the Common Expenses and shall own that certain percentage interest of the Common Surplus. . . .

17.1 Common Expenses, as generally defined in Article 3 of this Declaration and as set forth below in this Article 17, shall include expenses of the operation, maintenance, repair or replacement of the Common Elements, costs of carrying out the powers and duties of the Condominium Association, and any other expense designated as Common Expense by the Condominium Act, and/or the Condominium Documents, and shall be separate and apart from expenses incurred by the Property Owners' Association as more particularly described in the Property Owners' Association Documents and collected from Unit Owners by levy of Property Owners' Assessments.

17.1.1 Funds for the payment of Common Expenses shall be collected by Condominium Assessments assessed against Unit Owners in the proportions or percentages of sharing Common Expenses and ownership interest in the Common Elements. . . .

. . . .

18. ASSESSMENTS; LIABILITY; LIEN AND PRIORITY; INTEREST; COLLECTION:

18.1 Pursuant to the Condominium Act and the Condominium Documents, the Condominium Association, through its Board of Directors, shall have the right and power to fix and determine, from time to time, the sums necessary to provide for the budgetary requirements and Common Expenses of the Condomin-

---

**2.** The two condominium units were jointly owned by the debtor and his wife, Sonya W. Butcher. Mrs. Butcher is also a debtor in Chapter 7. The Association, however, asserts no administrative expense claim against her estate.

**3.** This case was commenced by the filing of an involuntary petition against the debtor on June 29, 1983. The order for relief was entered un-

der Chapter 7 of title 11 of the United States Code on August 22, 1983.

**4.** The Association is authorized to make and collect assessments pursuant to Florida Statute 718.116 and the Association's "Declaration of Condominium."

ium Association to the extent maintained by, contracted by, or constituting the responsibility of, the Condominium Association, including, without limitation, the expense allocable to services being rendered by any management company with which the Condominium Association may contract, and the right and power to levy Condominium Assessments therefor in amounts to be set and determined by the Board of Directors of the Condominium Association....

18.2.1 The Board of Directors of the Condominium Association shall approve, in advance, budgets for this Condominium for each fiscal year, which budget shall project anticipated income and estimated expenses in sufficient detail to show separate estimates for taxes, if any, and insurance for the Common Elements, plus operating and maintenance expenses, and other reasonable and necessary expenses, as more particularly provided in the Bylaws of the Condominium Association.

18.2.2 The annual budget of this Condominium shall be apportioned among all Units in this Condominium....

The Association's budget for 1983, 1984, and 1985 amounted to $410,000, $388,000, and $335,000, respectively. Budgeted expenses included salaries for a manager, secretary, maintenance personnel, and housekeepers; employee benefits and payroll taxes; maintenance and repair services attributable, inter alia, to buildings, landscaping, a pool, elevators, air conditioning, waste removal, and pest control; professional fees, including accounting, audit, and legal fees; supplies and materials; utilities; insurance; inspection fees and permits; and reserves for roofing, paving, and painting.

The portion of the Association's annual budget assessed against the two units owned by the debtor was 1.6165% for Unit 316 and 1.4627% for Unit 413. Of the $31,864.54 claimed by the Association, $16,604.73 is attributable to Unit 316; $15,259.81 is attributable to Unit 413. These amounts include assessments, late charges, and interest.

The Association contends that the assessments for which it seeks reimbursement as an administrative expense were used for the maintenance and upkeep of the two condominium units together with their common elements. Specifically, the Association argues that "these monies were used to paint the units, landscape the area, make any repairs and replacements to roofs, etc., and, in addition, were used to pay the wages and salaries of the personnel, who preserved and enhanced the bankrupt's estate." *Memorandum Of 2001 Sailfish Point Condominium Association, Inc. In Support Of Motion For Administrative Expenses*, at unnumbered pp. 4–5. The Association offers no proof as to any actual expense incurred by it either in respect to condominium Units 316 and 413 or the 2001 Sailfish Point Boulevard Condominium project as a whole. It argues that "[s]ince the bankruptcy estate owned part of the condominium common elements, the continued upkeep and maintenance of the entire condominium common elements worked to enhance the units 316 and 413's marketable value." *Id.* at unnumbered p. 5. The Association, however, offers no evidence of the "marketable value" of the units at the time of the filing of the involuntary petition or at the time they were abandoned by the trustee on June 30, 1985.

## II

Bankruptcy Code § 503 provides in material part:

(b) After notice and a hearing, there shall be allowed, administrative expenses ... including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case....

11 U.S.C.A. § 503 (West 1979 & Supp. 1989).

 The court has broad discretion to determine whether a claim for an administrative expense is, in actuality, an administrative expense. *In re Dakota Indus., Inc.*, 31 B.R. 23, 26 (Bankr.D.S.D.1983). Bankruptcy courts should strictly scruti-

nize claims and narrowly construe the terms "actual" and "necessary." *Matter of Patch Graphics,* 58 B.R. 743, 745 (Bankr.W.D.Wis.1986). *See Grantham v. Eastern Marine, Inc.,* 93 B.R. 752, 754 (Bankr.N.D.Fla.1988); *In re Sinclair,* 92 B.R. 787, 788 (Bankr.S.D.Ill.1988). The burden of proof to demonstrate that the claim is an administrative claim is upon the movant. *Sinclair,* 92 B.R. at 788; *Patch Graphics,* 58 B.R. at ·745. The movant must also show "that the expenses were reasonable, necessary and benefited the estate." *In re Hendersonville Bowling Center, Inc.,* 65 B.R. 963, 965 (Bankr.M.D. Tenn.1986). The *Patch Graphics* court stated that "the expense in question must be shown to have been 'actual and necessary.'" 58 B.R. at 745.

■ Courts have not spoken with unanimity when determining whether or not to allow a claim for an administrative expense under § 503(b)(1)(A). One approach looks not to any actual benefit received by the estate, but to the estate's ownership or possession of the property. A different approach allows an administrative expense claim once the creditor demonstrates that a benefit has accrued to the estate. A third approach, consistent with the second, denies the creditor's claim when the services or expenses provided have not benefited the estate. Finally, no administrative expense claim is allowable where the movant incurs the expense substantially in its own self-interest. The court recently discussed these four theories in depth, citing cases in support of each, in conjunction with its resolution of an administrative expense claim in another case. *See In re Moore,* 109 B.R. 777 (Bankr.E.D.Tenn.1989). That discussion need not be repeated in the instant proceeding.

It has been noted in a recent decision:

An administrative expense claim is a priority granted to those who either help preserve and administer the estate or who assist with the rehabilitation of the debtor so that all creditors will benefit. Claims under this subsection are judged by the actual value received by the estate. An administrative expense only qualifies to the extent that it was necessary for the preservation of the estate. *In re Mishkin,* 85 B.R. 18, 21 (Bankr.S.D. N.Y.1988) (citations omitted).

The Sixth Circuit has recently observed that "administrative expenses under § 503 ... should reflect actual value conferred on the bankrupt estate...." *United Trucking Service, Inc. v. Trailer Rental Co., Inc. (In re United Trucking Service, Inc.),* 851 F.2d 159, 162 (6th Cir.1988).

Two recent cases have considered the issue of administrative expense claims arising from homeowners' association fees. In *In re Mishkin, supra,* a condominium association sought administrative priority for post-petition common charges and assessments. The association had been granted relief from the automatic stay to file a notice of lien pursuant to applicable state law to secure payment of the charges and assessments.[5] The lien would have attached to the proceeds of the sale of the condominium. However, instead of filing the notice of lien, the association filed a motion for administrative expenses asserting a claim approximating $35,000.

In its motion, the association contended that the postpetition charges and assessments were used for the upkeep of the debtor's condominium, including repair of the roof and payment of utilities. Thus, the association argued that the expenses were necessary for the preservation of the estate and constituted a benefit to the estate. The trustee, however, argued that the association had not established that such charges were actually utilized in the

---

5. The court observes in the case sub judice that the Association in its pretrial Memorandum states that it secured payment of the disputed fees by filing two claims of lien pursuant to applicable Florida law on April 9, 1985. The Association did not, however, obtain modification of the automatic stay prior to filing its

claims of lien. The liens were, accordingly, void. *Smith v. First America Bank (In re Smith),* 876 F.2d 524, 526 (6th Cir.1989). The trustee does not raise the automatic stay issue, presumably for the reason that the Association's lien rights were extinguished upon foreclosure by the first mortgage holder.

maintenance of the debtor's particular unit. The court denied the association's motion on the grounds that there was no showing "that the funds were actually utilized to preserve the value of and benefit the *debtor's* property, not the Condominium community as a whole...." *In re Mishkin*, 85 B.R. at 21 (emphasis in original).

A similar situation faced the court in *In re Lenz*, 90 B.R. 458 (Bankr.D.Colo.1988). In *Lenz*, the court allowed an administrative expense claim in the amount of $661.78 for homeowners association fees. Without citing specific authority, the court determined that the fees were actual, necessary costs and expenses of preserving the estate. The court concluded:

> [I]t is through the assessments that ... [the association] carries out its duties under the covenants to operate and maintain the swimming pool, maintain the greenbelt and open space areas of the subdivision, and pay the property tax on the common areas. These activities necessarily confer benefit and value to all of the properties in the subdivision, including the Debtors' property.

*In re Lenz*, 90 B.R. at 460.

*Mishkin* and *Lenz* represent two differing approaches to the same issue. The distinction appears to be that in *Lenz* the court presumed a benefit to the estate, while in *Mishkin* the court required the creditor to establish an actual benefit to the debtors' property. In this court's opinion *Mishkin* is the appropriate approach, as it more clearly reflects the principles inherent in allowing administrative expense claims, i.e., the requirement that the claimant demonstrate the necessity of its expenses, and the actual value to the estate resulting from those expenses. This is the rationale utilized by the Sixth Circuit in *In re United Trucking Service, Inc., supra*. In *Lenz* the court focuses on the necessity of the expenses in enabling the association to perform its duties, not on the necessity of those expenses as they relate to a preservation of the debtor's estate. Further, the *Lenz* court does not address the issue as to whether the expenses "actual[ly]" benefitted the estate.

In the instant case, the Association has not demonstrated that the fees it assessed the debtor were in any way utilized to preserve and benefit Condominium Units 316 and 413. Clearly, there is nothing in the record establishing that the $31,864.54 which the Association seeks to recover as an administrative expense, represents "actual, necessary costs and expenses of preserving" the two condominium units. This court will not presume a benefit by the mere assessment of the fee. Section 503(b)(1)(A) does not allow such a presumption.

### III

For the reasons discussed herein, the Association's motion shall be denied. This Memorandum constitutes findings of fact and conclusions of law as required by Fed. R.Bankr.P. 7052. An appropriate order will be entered.