**In re Karl Hans FLUGEL and Cheral Flugel, Debtors.**

**Bankruptcy No. 95–13122–H13.**

United States Bankruptcy Court, S.D. California.

May 19, 1996.

Ronald L. Stadtmueller, Law Offices of Gerald H. Davis, San Diego, CA, for Debtors.

Thomas J. Polis, Marshack & Goe, Santa Ana, CA, for D.W.A. Smith 7 Company.

David L. Skelton, Chapter 13 Trustee, San Diego, CA.

## MEMORANDUM DECISION

PETER W. BOWIE, Bankruptcy Judge.

Karl and Cheral Flugel, debtors herein, ("Debtors") have proposed a Chapter 13 plan which includes a "special provision" for the assumption of a lease of real property. D.W.A. Smith 7 Company (DWA), the lessor, opposes confirmation on the grounds that the Debtors may not assume the lease under divers provisions of Bankruptcy Code Section 365.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L ).

### I. FACTS

On or about July 1, 1995 the Debtors and DWA entered into a ten-year lease of non-residential real property. Rent under the lease was to be paid on the first of each month in the amount of $2,080 for the first year plus $783 for common area maintenance, property taxes and insurance. The Debtors were also to have paid a security deposit of $2,080.

The Debtors promptly defaulted. Their first check, presumably for the security deposit and the first month additional charges, was returned for insufficient funds. The debtors continued to make sporadic payments and were, as of November 29, 1995, behind in the amount of $10,275.00.

On November 29, 1995 the Debtors, doing business as Spicey Fish Tales, filed a petition under Chapter 13 of the Bankruptcy Code. On the same date the Debtors, using the

standard form, submitted a proposed plan. The Debtors attached to the plan an additional page which bears the following provision:

> 17. *Special Provision.* Real Estate Lease Assumption. Notwithstanding any other provision of this plan, debtor(s) during the pendency of this case shall make, and following completion of this case shall continue to make, the usual and regular payments (including any balloon payments) called for by any Lease agreements, directly to below named landlord in a current manner. However, arrears to named landlord (their agents and assigns) shall be paid in installments by Trustee from funds available for distribution monthly, noncumulative, and except for creditors in paragraph 1 through 5 of this plan, shall be paid in advance of periodic distribution to other creditors.
>
> Provisions of this paragraph shall operate to cure and (sic) default of any real estate lease agreement notwithstanding that by the terms thereof or by the laws or processes of a governmental unit the time for redemption or reinstatement has expired.

| NAME OF LANDLORD | ESTIMATED ARREARS | INSTALLMENT |
|---|---|---|
| SMMHE Park | $1,000.00 | $125.00 |
| DWA Smith Co. | $ 960.00 | $125.00 |

Debtors' Plan, p. 4, ¶ 17.[1]

On December 1, 1995, DWA was served with a notice of automatic stay and a copy of the first page of the petition. On December 8, 1995, DWA was served with the "Order and Notice for Meeting of Creditors," ("341 Notice"). The 341 Notice gave a general summary of the plan and notice that the plan was on file at the Bankruptcy Court as a public record. The 341 Notice also included a "Special Notice to DWA SMITH CO" regarding "BACK RENT/LEASE" as follows:

Creditors named above who have allowed claims for real estate or mobile home arrears shall be paid 100% in non-cumulative installments as indicated. Monthly payments shall be in advance of other creditors ... Post-petition regular monthly payments shall be paid to lienholders by the debtor directly.

On January 11, 1996 DWA filed an objection to confirmation. DWA contends that the Debtors have failed to comply with Code section 365(d)(3) regarding post-petition performance under the lease by failing to make rent payments for December 1995 and January 1996, and that the Debtors have not satisfied Code Section 365(b) in that they have not made adequate arrangements to cure the pre- and post-petition arrearage.[2] On March 8, 1996 DWA filed a supplemental objection arguing that since the Debtors never filed a "motion" to assume the lease, it must be deemed rejected pursuant to Bankruptcy Code Section 365(d)(4). The Debtors obviously disagree.

## II. DISCUSSION

### A. Section 365(d)(4): Is a Motion to Assume Necessary When Assumption is Proposed in a Plan?

■ The requirement of a motion to assume is found in Rules 6006(a) and 9014. Rule 6006(a) provides that a "proceeding to assume ... an unexpired lease, other than as part of a plan, is governed by Rule 9014." Rule 9014 requires a motion, reasonable notice and an opportunity for a hearing. The 1983 Advisory Committee Note to Rule 6006 provides, however, that the Rule "does not apply ... to the assumption or rejection of contracts in a plan pursuant to § 1123(b)(2) or § 1322(b)(7)."[3] The Bankruptcy Rules

---

1. The parties' contentions regarding the pre-petition arrearage differ substantially. The Debtors estimated the arrearage at $960, while DWA has provided evidence that it actually totals $10,275. The Debtors have provided no evidence in support of their estimation. The Court accepts DWA's figures for the purposes of this particular motion.

2. Unless otherwise indicated, all Section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, and all Rule references are to the Federal Rules of Bankruptcy Procedure.

3. See also, *Collier on Bankruptcy,* ¶ 6006.05: "Rule 6006 is never applicable to the assumption or rejection of an executory contract contained in a plan under chapters 9, 11, 12, or 13."; and Bankruptcy Judge Keith Lundin's, *Chapter 13 Bankruptcy,* 2nd Ed. § 4.87: "Section 1322(b)(7) and Bankruptcy Rule 6006 permit the Chapter 13 debtor to assume ... either by motion in advance of confirmation or by simply providing for the assumption ... in the proposed plan."

thus do not require a motion to assume when assumption is to be accomplished under a plan. This does not, however, relieve a debtor of the requirements of Code Section 365. *In re Bergel,* 185 B.R. 338, 339 (9th Cir. BAP 1995); (Rules of Bankruptcy Procedure cannot modify substantive rights under the Bankruptcy Code.).

## B. Section 365(d)(4): Requirements in Lieu of Motion.

▮ Code Section 1322(b)(7) provides that a Chapter 13 plan may provide for the assumption of an unexpired lease subject, however, to the requirements of Section 365. Under Section 365(d)(4) a lease will be deemed rejected unless it is assumed within 60 days of the order for relief.[4] Section 365(a) provides that assumption is "subject to the court's approval"; however, a debtor need not actually obtain court approval within the 60 days. *In re Victoria Station,* 840 F.2d 682, 684 (9th Cir.1988). The debtor need only take the appropriate steps to assume within the 60 days. *Id.*[5]

▮ Such steps, as discussed above, need not include a formal motion under Rule 9014, but they must satisfy the objective of Section 365(d) which is to "prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate." H.R.Rep. No. 595, 95th Cong., 1st Sess. 348 (1977); S.Rep. No. 989, 95th cong., 2d Sess. 59 (1978) U.S.Code Cong. & Admin.News 1978 at 5787, 5963. Section 365(d)(4) is designed to protect lessors from delay and uncertainty by forcing the debtor to act quickly to assume unexpired leases. *In re Moreggia & Sons, Inc.,* 852 F.2d 1179, 1185 (9th Cir.1988).

The issue of a proposed assumption under a plan was addressed by the district court in *In re REPH Acquisition Co.,* 134 B.R. 194 (N.D.Tex.1991). In *REPH* the debtor filed a prepackaged plan five days after the case was commenced. *Id.* at 195–96. The plan provided that unless specifically rejected the debtor would assume all unexpired leases. *Id.* at 196. After 60 days had run the debtor brought a motion to assume a particular lease. *Id.* at 197. The lessor argued that the motion should be denied as the debtor had failed to bring it within 60 days. *Id.* The debtor countered, based upon the language of Rule 6006, that since the lease was to be assumed pursuant to the plan, no motion was required. *Id.* at 198. The court did not reach the issue of whether Rule 6006 excused a motion, but rather held that even if it did, the principles of notice and opportunity for a hearing, which are insured by compliance with Rule 9014, must be adhered to when assuming a lease pursuant to a plan. *Id.* at 198–99. Since the lessor had not received notice of the plan, the court held that the debtor had not complied with Section 365 and the lease would be deemed rejected. *Id.*

Similar analysis was employed by my colleague, Chief Judge Louise Adler, in *In re Aneiro,* 72 B.R. 424 (Bankr.S.D.Cal.1987), with the opposite result. In *Aneiro* a debtor proposed to assume a lease under his Chapter 13 plan. The court, finding that the terms of the plan gave sufficient notice, held that inclusion in a plan satisfied Section 365: "Debtor here ended that uncertainty when he communicated his intent to assume the 1984 Lease in his ... plan." *Id.* at 427–28.

In this case the actions of the Debtors effectively ended the uncertainty well within the 60–day period of section 365(d)(4). The Debtors declared their intention to assume the lease in their plan. The plan was filed with the petition. Within nine days DWA

---

4. The filing of a voluntary petition constitutes an order for relief. 11 U.S.C. § 301. In the present case November 29, 1995, the date the Debtors' filed their petition, is the date of the order for relief.

5. In *Victoria Station* the court was discussing a motion to extend the time to assume, rather than a plan which proposed to assume. Nevertheless, the rationale for focusing on the actions of the debtor rather than the actions of the court applies equally to a request for confirmation as to a

motion to approve assumption. In *In re Southwest Aircraft Services, Inc.,* the Ninth Circuit explained that:

> [A] rule that forfeits a party's rights, benefits, privileges or opportunities simply because a court fails to act within a particular time period would be quite extraordinary.

831 F.2d 848, 851 (9th Cir.1987), cert. denied, 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988).

was served with the 341 Notice which included specific notice that the Debtors intended to assume the lease. DWA had an opportunity to object, which it did on January 11, and March 8, 1996, and an opportunity to be heard. DWA was afforded the safeguards which would have been afforded under Rules 6006(a) and 9014. This Court holds that the assumption provision in the plan, together with the 341 Notice, satisfied the requirements of Section 365(d)(4).[6]

## C. Section 365(d)(3): Does a Violation Preclude Assumption?

■■■ Subsection (d)(3) of Section 365 requires a debtor to timely perform all obligations "arising from and after the order for relief under any unexpired lease of nonresidential real property, until the lease is assumed. . . ." The section is designed to ensure payment to the lessor during the time the debtor is deciding whether to assume or reject. *In re Pacific–Atlantic Trading Co.,* 27 F.3d 401, 405 (9th Cir.1994). DWA argues that since the Debtors failed to make timely post-petition rent payments they should be precluded from assuming the lease. This argument was squarely rejected by the Ninth Circuit in *Southwest Aircraft, supra,* 831 F.2d at 853. The court held that failure to comply was simply one of many factors to be considered when determining, in that case, whether to extend the time to assume or reject. *Id.*

Furthermore, in this case the time period covered by the section, the time during which the Debtors were deciding whether to assume or reject the lease, was rather brief. The Debtor decided to assume immediately and DWA was served with notice eight days

later. Any violation of Section 365(d)(3) in this case is simply a post-petition default which must be cured under Section 365(b)(1) if the Debtors are to assume. *In re Defender Drug Stores, Inc.,* 127 B.R. 225 (9th Cir. BAP 1991). Since the Debtors must cure in order to assume under any circumstances, Section 365(d)(3) really adds nothing in this case.

## D. Section 365(b)(1): Prerequisites to Assumption.

■■■ DWA argues finally that the Debtors have failed to comply with the requirements of Section 365(b)(1) and thus the assumption should not be allowed. Section 365(b)(1) provides that, if there has been a default in the lease, a debtor may not assume such lease unless the debtor—

(A) cures, or provides adequate assurance that the [debtor] will promptly cure, such default;

(B) compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1). Under the lease the Debtors were to have made monthly payments of $2,863. The Debtors were also to have paid a security deposit of $2,080.

DWA has provided evidence, to which the Debtors have offered no rebuttal, establishing that from the beginning of the lease through January 1996, the Debtors are behind in the rent in the amount of $14,961.[7]

---

6. In this case the plan was filed and notice of the assumption provisions was served within 60 days of the order for relief. Debtors should be wary, though, of relying solely on the notice of 341 meeting which is prepared and disseminated by the Chapter 13 trustee. In this case the 341 Notice made specific mention of the Debtor's intent to assume the particular lease with DWA. The result may not have been the same had the 341 notice failed to mention DWA specifically. A debtor may wish to send specific notice to landlords. Similarly the result may not have been the same had the plan simply carried a blanket boilerplate assumption provision as in *REPH.*

7. This figure is based upon monthly rent of $2,863. The lease provided for a 100% rent abatement for the first two months and a 50% rent abatement for months three through twelve, provided the Debtors were not in default. If the abatement were in effect this figure would be reduced by $2,080 for each of the months July and August of 1995 and by $1,040 for each of the five months from September 1995, to January 1996. The total abatement would be $9,360. Thus the total arrearage would be $5,601. As discussed above, however, the Debtors defaulted immediately and thus the rent abatement provisions do not appear to apply. The Debtors have

Additionally, DWA has incurred attorneys fees in the estimated amount of $1,500–2,000.

Under the plan the Debtors propose to make current rent payments and cure their arrearage by making additional monthly payments of $125.00.[8] Ignoring the attorney fees, to which DWA likely would be entitled upon a showing of proof under section 365(b)(1)(C), the Debtors cure would take just over 119 months, or nearly ten years.[9]

Under section 365(b)(1) the Debtors must cure the pre- and post-petition arrearage "promptly" if the plan is to be confirmed. This court is aware of no case in which a cure period of even half that proposed by the Debtors has been approved. In *In re Coors of North Mississippi, Inc.*, 27 B.R. 918 (Bankr.N.D.Miss.1983), the court approved a three-year cure period, however, the court also factored in the prospect of a long and successful business operation. The court in *In re Whitsett*, 163 B.R. 752 (Bankr.E.D.Pa. 1994), approved a period of just under two years, however, the court noted that the lease was federally subsidized providing the lessor with unusual protections.

Without such special considerations, much shorter periods have been held not to be prompt. *In re Yokley*, 99 B.R. 394 (Bankr. M.D.Tenn.1989) (two years under Chapter 13 plan); *In re Embers 86th Street, Inc.*, 184 B.R. 892 (Bankr.S.D.N.Y.1995) (29 months); *In re Liggins*, 145 B.R. 227 (Bankr.E.D.Va. 1992) (48–60 months); *In re Urbanco, Inc.*, 122 B.R. 513 (Bankr.W.D.Mich.1991) (six months). Ten years under the Debtors' plan is certainly not prompt.

The Debtors' proposed plan does not meet the requirements of Section 365(b)(1) and is thus not confirmable. If the Debtors wish to reorganize their affairs under Chapter 13 they must either jettison the lease or bail out the arrearage much faster than they have proposed. There is a separate issue regarding curing the post-petition arrearage by postponing payment to pre-petition creditors which need not be addressed at this time.

### III. CONCLUSION

The Debtors' plan dated January 8, 1996 shall not be confirmed. The objection to confirmation is sustained. Nothing in this Opinion shall be taken to prejudice the Debtors from submitting a modified proposed plan.

This Memorandum Decision is in lieu of findings of fact and conclusions of law. Counsel for DWA is directed to prepare an order in accordance with this Memorandum Decision within ten (10) days of the date of entry.

IT IS SO ORDERED.

---

not provided any evidence or even argued to the contrary.

8. The plan only refers to pre-petition arrearage; however, as explained in *Defender Drug Stores*, the Debtors are also required to cure the post-petition defaults. 127 B.R. at 233.

9. It appears from the Debtors' plan that the proposed cure payments were based upon their estimated pre-petition arrearage of $960. The Debtors have, however, offered no evidence to challenge DWA's evidence that the pre- and post-petition arrearage actually exceed $14,000.