**In re Eddie Faye HALL, Debtor.**

**Bankruptcy No. 96–25514.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Nov. 26, 1996.

---

Irving Zeitlin, Memphis, TN, for Debtor.

Robert F. Beckmann, Memphis, TN, for Millington Housing Authority.

George Stevenson, Chapter 13 Trustee, Memphis, TN.

## MEMORANDUM OPINION AND ORDER RE MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY

G. HARVEY BOSWELL, Bankruptcy Judge.

The Millington Housing Authority ("MHA") and the debtor, Eddie Faye Hall, entered into a dwelling lease agreement whereby MHA agreed to lease an apartment to the debtor. Prior to the filing of debtor's bankruptcy, debtor had become delinquent on her rent. As a result, MHA filed a claim and received a judgment for possession in Shelby County General Sessions Court. Upon filing bankruptcy, the debtor listed MHA as a priority creditor in her plan. Debtor subsequently became delinquent on her post-petition rent. As a result, MHA filed this motion requesting that the past due post-petition rent be paid as an administrative expense and that an order issue granting relief from the automatic stay.

This Court conducted a hearing on this matter on October 22, 1996, pursuant to FED. R.BANKR.P. 9014. This is a core proceeding. 28 U.S.C. § 152(b)(2). After reviewing the

testimony from the hearing and reviewing the record as a whole, the Court makes the following findings of fact and conclusions of law. FED.R.BANKR.P. 7052.

## I. Findings of Fact

On August 30, 1993, MHA and the debtor entered into a dwelling lease agreement whereby the debtor agreed to lease the premises at 8609 Wells Road, Unit #4, from MHA in exchange for a monthly rental payment. By early 1996, debtor had become delinquent in paying her rent. As a result of such delinquency, MHA filed a claim against the debtor in Shelby County General Sessions Court. Case number F106334F. A judgment for possession subsequently issued against the debtor.

■ Before this writ of possession was executed by MHA, debtor filed a petition for relief under the Bankruptcy Code on May 3, 1996.[1] In her chapter 13 plan filed the same day, debtor listed MHA as a priority creditor and proposed to pay $20 a month for forty-eight (48) months in order to pay off the pre-petition arrearage owing to MHA. The plan also listed debtor's intention to assume the unexpired lease with MHA and to make future rental payments on time and in full beginning with the June 1996 rent.

On June 18, 1996, this Bankruptcy Court issued an order confirming debtor's plan. Docket No. 9. The confirmation order made no specific mention of debtor's assumption of the MHA lease or debtor's intention to pay future rents on time. The only reference made to MHA in the order was: "That the debtor's plan, which is attached hereto, is confirmed." The plan which was attached only listed the monthly plan payment of $20 to MHA. However, the plan that was sent to the creditors and attached to the debtor's petition made specific mention of the assumption and future rents.

In June 1996 debtor paid her rent on time and in full as the plan provided. On July 31,

1996, however, MHA filed a motion for allowance and motion for relief from the automatic stay. Docket No. 14. In this motion, MHA stated that debtor had failed to pay July's rent, utilities and late charges in the amount of $223.57. This court issued a consent order withdrawing this motion on August 20, 1996. Docket No. 18.

On August 29, 1996, an administrative order allowing claims was issued. Docket No. 19. MHA was listed in said order as a priority creditor having a claim of $477.61 for past-due pre-petition rent. At no time during debtor's case was there a motion made to have the assumed lease approved by the Court. As a result, no separate order issued allowing the lease assumption.

On September 11, 1996, MHA again filed a motion for allowance of administrative expenses and relief from the automatic stay. Docket No. 23. This motion was nearly identical to the one withdrawn on August 20th; however, the amount MHA was requesting be paid as an administrative expense had increased to $616.62, indicating that the debtor had failed to pay August's rent also.

Debtor moved out of the MHA premises on September 19, 1996. On October 22, 1996, this Court held a hearing on MHA's motion. At such time, MHA's attorney, Robert Beckmann, stated to the Court that MHA had incorrectly calculated the arrearage amount due them to be $616.62. MHA instead alleged that debtor owed them $481.52. Debtor's attorney, Irving Zeitlin, agreed with this revised figure and agreed that debtor owed MHA this amount.

## II. Conclusions of Law

In deciding whether or not to grant MHA's motion for administrative expenses, there are two issues which must be decided. First, in order to effectively assume an unexpired lease, must a chapter 13 debtor make a separate motion to assume, or is stating the

---

1. Tennessee law provides that a lease will remain "unexpired" so long as a writ of possession is not executed. *In re Talley*, 69 B.R. 219, 225 (Bankr. M.D.Tenn.1986). Such unexpired status is re-quired under the Bankruptcy Code as a prerequisite to assumption of a lease by a debtor or trustee. 11 U.S.C. § 365.

assumption in the plan enough? Second, providing the lease was properly assumed, will the post-petition rent on which the debtor defaulted be classified as an administrative expense or as a general unsecured debt?

■ To make a firm determination of the first issue, it is necessary to thoroughly investigate all of the statutory provisions regarding assumption of unexpired leases in a chapter 13 case. The starting point for this inquiry is found in 11 U.S.C. § 365(a) of the Bankruptcy Code, which gives the debtor power to assume or reject unexpired leases.[2] If, as in the case at bar, there has been a pre-petition default on a lease, § 365(b)(1) allows a debtor to assume such lease only if the default is cured and adequate assurance of future performance is given. Debtor's plan listed MHA as a priority creditor entitled to $20 per month for forty-eight months for pre-petition default on the rent. This was debtor's cure. The plan also stated debtor's intention to make all future rental payments on time and in full, thereby providing adequate assurance. Further subsections of § 365 require that an assumption of an unexpired lease of residential real property be made prior to confirmation of the plan. § 365(d)(2). Providing debtor's assumption of the MHA lease in her plan is found to be adequate, this subsection was satisfied also.

■ After § 365, the next relevant code section is § 1322. The statutory purpose of this provision is to define what a plan in a chapter 13 case must and may include. The applicable portion for the MHA lease is § 1322(b)(7), which states that a chapter 13 plan may "subject to section 365 of this title, provide for the assumption ... of an unexpired lease of the debtor...." In examining this section, it is clear debtor was well within the permissible boundaries of chapter 13 when she stated her intent to assume the MHA lease in her plan.

The final guidance for a debtor seeking to assume a lease is found in FED.R.BANKR.P. 6006. This is by far the most enlightening part of the inquiry with subsection (a) of the rule providing that "a proceeding to assume ... an ... unexpired lease, other than as part of the plan, is governed by Rule 9014." Rule 9014, in turn, states that a motion, reasonable notice and a hearing are required for a Rule 6006 assumption. These two rules together seem to dictate that a separate motion is necessary to effectively assume a lease; however, Rule 6006 clearly exempts assumptions in chapter 13 plans from the mandates of Rule 9014 not only through its statutory language, but also through the advisory committee notes following. Such notes state that the procedures for obtaining court approval under Rule 6006 do not apply to § 1322(b)(7) plan assumptions. FED. R.BANKR.P. 6006 advisory committee notes.

At the hearing on MHA's motion for administrative expenses, for both parties indicated their agreement with this interpretation of the Bankruptcy Code sections and Rules. Despite this concurrence, however, neither side cited any caselaw in support of their position. This is most likely the result of the scarcity of reported decisions on this issue nationwide. To the best of this Court's knowledge, the Sixth Circuit has yet to make a determination on whether these statutory sections and rules work together to allow for assumption of an unexpired lease in a chapter 13 plan without a separate motion being made. The two leading cases from other circuits, however, agree in the conclusion that assumption in a plan is enough.

In *In re Flugel,* 197 B.R. 92 (Bankr. S.D.Cal.1996), a bankruptcy court was faced with chapter 13 debtors who had provided for the assumption of a nonresidential real property lease in a special provision attached to their plan. This provision provided that debtors would assume an unexpired lease

---

**2.** Despite the use in § 365 of the word "trustee," a debtor in a chapter 13 case is granted the same statutory power to assume or reject via 11 U.S.C. § 103(a), which states that all provisions found in chapters 1, 3, and 5 are applicable to cases filed under chapter 7, 9, 11, 12, or 13. Because of the limited role a trustee plays in chapter 13 cases, this power of assumption is granted to and exercised by the debtor.

which had been defaulted on pre-petition and would cure said default and provide adequate assurance of future performance. *Id.* at 92. The issue before the *Flugel* court was the same as the one at bar: was the assumption provision in debtor's plan adequate to satisfy the requirements of assumption? The *Flugel* court held that it was so long as some form of notice of the assumption provision was sent along with the § 341 Notice of Meeting of Creditors. *Id.* at 96. In reasoning this decision, the court engaged in a step-by-step analysis of § 365, § 1322 and Rule 6006. *Id.* at 94–95.

In another Southern District of California case, *Riddle v. Aneiro (In re Aneiro),* 72 B.R. 424 (Bankr.S.D.Cal.1987), the court came to the same conclusion as in *Flugel,* namely that the assumption provision in debtor's chapter 13 plan satisfied the requirements of the Bankruptcy Code and Rules. *Aneiro,* 72 B.R. at 427. Here, the court also engaged in an analysis of § 365, § 1322 an Rule 6006; however, instead of holding that no motion was necessary, the *Aneiro* court stated that the debtor's motion to assume the lease was "made" when the lessor of the assumed lease was served notice of the plan's filing. The court further went on to the say that because no creditors had objected to confirmation of the plan based on the lease assumption, the court effectively approved debtor's assumption when it confirmed debtor's plan. *Id.* at 428.[3]

■ Under either the *Flugel* or *Aneiro* holding and reasoning, the debtor in the case at bar satisfied the requirements of lease assumption in the context of chapter 13. She provided for assumption of the MHA lease in her plan. MHA, as well as all other creditors, received notice of this assumption when the § 341 notice was sent out with debtor's plan attached. No one objected to confirmation of the debtor's plan for any reason. The Court confirmed debtor's plan on June 18, 1996. As a result of these actions, the MHA lease was effectively assumed by the debtor by providing for it in her plan. No separate Rule 9014 action was necessary. Therefore, the MHA lease is an assumed lease.

Because of this assumed status the MHA lease now has, it is next necessary to consider the second issue in this proceeding: Is MHA entitled to payment of the post-petition rent default as an administrative expense? Like the assumption inquiry, a determination of this issue requires several steps. First, 11 U.S.C. § 503 must be analyzed to see what the statutory provisions regarding administrative expenses dictate. Secondly, the question of how § 365 and § 502 interact with § 503 must be answered. And lastly, because the provisions in § 365 and § 503 are much more ambiguous in dealing with administrative expenses than with lease assumptions, an investigation of the relevant caselaw must be made to see how courts have resolved the issue.

11 U.S.C. § 503 is the statutory provision which provides for the allowance of administrative expenses. The only guidance this section gives to the case at bar is found in § 503(b)(1)(A) which states that administrative expenses will be allowed for the "actual, necessary costs and expenses of preserving the estate." Nothing more is said either in the statute or the advisory committee notes and legislative statements following § 503. What qualifies as an actual, necessary cost is left unanswered in the remainder of the Bankruptcy Code also.

In addition to § 503, 11 U.S.C. § 365 is once again necessary to the analysis. Instead of looking for permission to assume a lease though, what is now important to the case at bar is § 365(g). This subsection states that if an unexpired lease has been assumed under § 365 and/or under a confirmed chapter 9, 11, 12 or 13 plan, a subsequent rejection of such lease is tantamount to a breach of the lease. While the statutory language does not offer any clues as to how

---

**3.** Two secured creditors and the trustee objected to confirmation of the *Aneiro* plan based on the percentage debtor was proposing to pay on other debts. The plan was subsequently amended to resolve these objections, but the lease assumption was left unchanged. *Aneiro,* 72 B.R. at 428.

such a breach relates to administrative expenses, the Notes of Committee on the Judiciary following the section offer some insight to the matter:

> Subsection (g) defines the time as of which a rejection of an ... unexpired lease constitutes a breach of the ... lease. Generally, the breach is as of the date immediately preceding the date of the petition. The purpose is to treat rejection claims as prepetition claims.

11 U.S.C. § 365 notes of committee on judiciary. These notes seem to intimate that Congress intended to treat the majority of rejections as pre-petition claims and not post-petition administrative expenses. However, because the word "generally" is used by the committee, it is possible that there are exceptions to this classification of post-petition breaches.

To complicate matters, § 502(g) is structured in such a way as to give both Congress's intention and the possible exception support. This section states:

> (g) A claim arising from the rejection, under 365 of this title or under a plan under chapter 9, 11, 12 or 13 of this title, of an ... unexpired lease of the debtor that has not been assumed shall be determined ... the same as if such claim had arisen before the date of filing of the petition.

It is clear that § 502(g) mandates that unassumed leases which are rejected post-petition are to be treated as pre-petition claims. But whether or not this classification then means that assumed leases which are later rejected are not pre-petition, but post-petition, administrative claims is unclear.

MHA's position in this matter is that § 365(g) and § 502(g) do establish exceptions which entitle it to payment of post-petition defaults as administrative expenses. The ramification of this argument, if held true, is that MHA would be paid the default amount in one lump sum before other creditors would receive anything. In its motion for administrative expenses, MHA cites the chapter 11 case of *Samore v. Boswell (In re Multech Corp.)*, 47 B.R. 747 (Bankr.N.D.Iowa 1985), in support of this contention. Additionally, at the hearing on this matter, MHA directed the Court's attention to *In re Pearson*, 90 B.R. 638 (Bankr.D.N.J.1988), which applied the *Multech* chapter 11 holding to a chapter 13 case.

Debtor's position, on the other hand, adopts the ideas set forth in § 502(g) and the committee notes following § 365 as conclusive. The view taken by debtor is that the post-petition default is a pre-petition unsecured claim which should be paid out over the life of the plan at the percentage rate set by the Court for unsecured claims.[4] Debtor cited no caselaw in support of this, but urged that this was the plain meaning and intent of § 365(g). Because of the ambiguity of the statutory sections involved and the lack of binding Sixth Circuit authority cited by debtor, it is necessary to make a thorough investigation of caselaw interpreting § 365(g), § 502(g), and § 503(b) to see how different courts have resolved the issue.

Despite the fact that MHA's cited caselaw is not binding on a Sixth Circuit court, it is persuasive and will provide a judicial yardstick by which to measure other decisions regarding administrative expenses. Therefore, it is with these two cases that the inquiry begins. In *In re Multech Corp.*, the bankruptcy court determined that assumption of a nonresidential lease which had been defaulted on pre-petition was in the best interests of the debtor's estate and allowed the debtor to assume such lease.[5] After meeting the assumed lease obligations for

---

4. In this case, the Court set the percentage for unsecured claims at 100%; however, being paid for the post-petition default as an unsecured creditor would mean MHA would have to recoup their rent over a period of forty-eight (48) months instead of getting the one lump sum payment. Docket No. 20.

5. The Court acknowledges the fact that *Multech* is a chapter 11 case; however, because of the innate similarities between the structure of chapter 11 and chapter 13 and because the statutory sections regarding administrative expenses appear in Code chapters which apply equally to all bankruptcy cases, chapter 11 caselaw provides

approximately two months, the debtor defaulted once again. This failure prompted the lessor to take back possession of the property. *Multech,* 47 B.R. at 749. The main issue presented to the *Multech* court was how did rejection of a lease assumed post-petition affect debtor's case. The court held that lessor's entire claim for damages, including rent arrearages, resulting from the breach was to be paid as an administrative expense. *Id.* at 750.[6] In reaching this decision, the court had little difficulty in deciding why rejections of assumed leases entitled lessors to administrative expense claims. The *Multech* court relied on the case of *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.),* 536 F.2d 950 (1st Cir.1976), in saying that because filing bankruptcy creates a new judicial entity separate and apart from the pre-petition debtor, the actions taken by this new entity were clearly acts of administration of the bankruptcy estate. *Multech,* 47 B.R. at 750. Therefore, the post-petition debtor (or debtor-in-possession in the case of chapter 11) acts in an administrative capacity when assuming the unexpired lease. The court went on to say that when such lease is then rejected by a post-petition debtor, the injuries and claims arising from such rejection are entitled to administrative expense priority. *Multech,* 47 B.R. at 751.

MHA's second cited case, *In re Pearson* takes the *Multech* chapter 11 holding and applies it to a chapter 13 fact pattern similar to the one at bar. In *Pearson,* a chapter 13 debtor assumed an unexpired automobile lease on which he had defaulted pre-petition. After confirmation of the plan, the lessor sought relief from the automatic stay in order to regain possession of the car due to debtor's post-petition failure to make the monthly lease payments. *Pearson,* 90 B.R. at 639. The debtor voluntarily turned possession of the car over to lessor. The lessor then sold the car at auction for approximately $11,000, which still left a remaining bal-

ance of $6065.93 on what debtor owed them for use of the car. After this sale, debtor filed a modified plan seeking to reject the car lease. Six weeks after this filing, the lessor filed a motion for payment of administrative expenses, claiming that the debtor's rejection of the previously assumed lease was a post-petition breach entitling them to an administrative claim for the remaining deficiency. *Id.* at 639. The *Pearson* court granted lessor's motion and held that debtor's rejection of the previously assumed lease did give rise to an administrative claim for the damages. *Id.* at 645.

In reasoning this decision, the *Pearson* court looked to sections 365(g), 502(g), 503(b), and 1322(a) to decide that the debtor's assumption and subsequent rejection were acts of administration. Section 365(g), the court stated, exempted rejections of leases assumed post-petition from § 502(g)'s general classification of breaches as giving rise to pre-petition claims. *Id.* at 640. Next, the *Pearson* court turned to the *Multech* analysis for the "new judicial entity" theory. The *Pearson* court fully agreed that a post-petition assumption of an unexpired lease was an act of administration and that an eventual rejection of that lease by the debtor gives rise to an administrative expense claim for all damages arising from said breach. *Pearson,* 90 B.R. at 641. Finally, the *Pearson* court looked at the § 503(b)(1)(A) allowance of administrative expenses in conjunction with the § 1322(a)(7) power to assume unexpired leases in the plan. These two sections, the court felt, worked together to make claims resulting from assumption of a lease actual and necessary costs of preserving the estate. *Pearson,* 90 B.R. at 642.

*In re Multech* and *In re Pearson* are very strong support for MHA's claim that the post-petition rents debtor defaulted on are entitled to administrative expense priority. Debtor assumed the MHA lease in her chapter 13 plan. The plan was subsequently

---

applicable guidance for a chapter 13 case. *See* 11 U.S.C. § 103.

**6.** The *Multech* court also held that lessor's claim was to be limited only by state law and not § 502 of the Bankruptcy Code.

936

confirmed without objection. One month after confirmation, the debtor defaulted on her rental payments. Under § 365(g), such rejection qualified as a breach. The § 502(g) pre-petition claim treatment is inapplicable here because debtor's rejection of the MHA lease was a breach of a previously assumed lease. Finally, the only claim MHA is asking be given administrative priority is the post-petition rent arrearage. Clearly, if all damages flowing from a rejection of an assumed lease are entitled to administrative priority, MHA's claim for rent alone is within the acceptable parameters of *Multech*'s and *Pearson*'s rules.

An extensive review of bankruptcy court, district court, and circuit court caselaw indicates that every circuit recognizes the theories set forth in *Multech* and *Pearson* as correct interpretations of the statutory sections dealing with administrative expenses.[7] The United States Supreme Court has even acknowledged this concept of treating the costs and claims arising from post-petition assumptions of contracts and leases as administrative expenses. *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 1198–99, 79 L.Ed.2d 482 (1984). While the Sixth Circuit has stated its agreement with the post-petition administrative expense theory, it has yet to issue a published decision specifically regarding whether or not rental payments on residential real property which have been defaulted on post-petition are included within this theory.[8] The two leading published decisions, *Employee Transfer Corp. v. Grigsby (In re White Mo-*

*tor Corp.)*, 831 F.2d 106 (6th Cir.1987) and *United Trucking Serv., Inc. v. Trailer Rental Company, Inc. (In re United Trucking Serv., Inc.)*, 851 F.2d 159 (6th Cir.1988), make clear that post-petition damages claims are entitled to administrative expense priority. In *White Motor*, the court held that no post-petition obligation had arisen on the part of the debtor and, therefore, no administrative expense priority was proper. 831 F.2d at 109. The agreement at issue in this case was a post-petition contract requiring the debtor to pay creditor for services performed pre-petition. In reaching this decision, the *White Motor* court applied the two-step analysis developed in the First Circuit case entitled *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976). The *White Motor* court adopted this test to determine whether or not the claim that was before them qualified for administrative priority. This resolution required the claimant to prove that his claim against debtor:

(1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefited the estate.

*White Motor*, 831 F.2d at 110, citing *Mammoth Mart*, 536 F.2d at 954.

In applying this test to the case before them, the *White Motor* court also relied on a Seventh Circuit case entitled *In re Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984). *Jartran* held that the only way for a creditor to prove

7. See *In re Thinking Machines Corp.*, 67 F.3d 1021 (1st Cir.1995); *In re Klein Sleep Products, Inc.*, 78 F.3d 18 (2d Cir.1996); *In re Channel Home Centers, Inc.*, 989 F.2d 682 (3d Cir.1993); *In re Stewart Foods, Inc.*, 64 F.3d 141 (4th Cir. 1995); *Matter of Braniff Airways, Inc.*, 783 F.2d 1283 (5th Cir.1986); *In re United Trucking Serv., Inc.*, 851 F.2d 159 (6th Cir.1988); *In re Jartran, Inc.*, 886 F.2d 859 (7th Cir.1989); *Jenson v. Continental Fin. Corp.*, 591 F.2d 477 (8th Cir. 1979); *In re Thompson*, 788 F.2d 560 (9th Cir. 1986); *In re Mid Region Petroleum, Inc.*, 1 F.3d 1130 (10th Cir.1993); *In re Airlift Int'l., Inc.*, 761 F.2d 1503 (11th Cir.1985)

8. In an unpublished decision entitled *Ballas v. Revco D.S., Inc. (In re Revco D.S., Inc)*., No. 93–

3597, 1994 WL 376884 (6th Cir. July 18, 1994), the Sixth Circuit addressed administrative expenses in the context of a lease. The court held that a post-petition agreement to extend a pre-petition lease was not a new transaction with the post-petition debtor. Therefore, when the debtor rejected the pre-petition lease, the damages resulting to the lessor were entitled to be paid as unsecured claims only. In reasoning this decision, the *Revco* court stated that if they had found (1) that the letter constituted a new lease entered into post-petition or (2) that Revco had assumed, rather than rejected, the lease, the lessor would have been entitled to payment of its damages as administrative expenses. *Id.* at *2.

that he had given consideration to the debtor was to show that the debtor had induced, post-petition, the creditor's performance. Absent this showing of post-petition inducement, a creditor was allowed nothing more than a pre-petition unsecured claim. *Jartran*, 732 F.2d at 586. The *White Motor* court found that the creditor in their case had not been induced by the debtor. As a result, no administrative priority was allowed. *White Motor*, 831 F.2d at 111.

The Sixth Circuit had another chance to issue a ruling on administrative expenses in the *In re United Trucking* case. The court there held that debtor's failure to abide by a pre-petition contract requiring debtor to provide upkeep on leased trailers qualified as a post-petition breach of the contract. Such breach, the court held, entitled the lessor/creditor to receive payment of his claims as administrative expenses. *United*, 851 F.2d at 162. In its reasoning, the *United* court recognized the *White Motor/Mammoth Mart* two-step analysis; however, the court decided that the "inducement" inquiry was inapplicable to the case before them. *United*, 851 F.2d at 161. Because of this, the court used the rationale developed in the Second Circuit case of *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119 (2d Cir.1960), which was more concerned with the § 503 "actual and necessary" requirement. In this analysis the focus was not on the actions of creditor and debtor, but rather on the issue of whether or not the claims reflect actual value conferred on the estate. *United*, 851 F.2d at 162. If the claims did, the *United* court said, they would be entitled to priority as administrative expenses; however, the claims would be limited to the "actual value conferred" amount. *Id.* at 163.

These cases, taken together, seem to support the idea that the Sixth Circuit is in favor of granting administrative priority to claims which satisfy the statutory and caselaw requirements. Before ruling on this issue in relation to MHA's motion, however, it is necessary to make a brief investigation of the procedural aspects of an administrative expense request. The Tennessee bankruptcy case of *In re Butcher*, 108 B.R. 634 (Bankr. E.D.Tenn.1989) provides a thorough overview of the relevant caselaw and serves as an excellent foundation for this analysis.

The first principle announced in *Butcher* is taken from the case of *In re Dakota Indus., Inc.*, 31 B.R. 23, 26 (Bankr.D.S.D.1983). This case established the principle that a bankruptcy court has broad discretion in determining whether or not a claim is entitled to administrative priority. *Butcher*, 108 B.R. at 636. Along with this discretion, however, goes the mandate taken from *Matter of Patch Graphics*, 58 B.R. 743, 745 (Bankr. W.D.Wis.1986), that bankruptcy courts should strictly scrutinize claims and narrowly construe the terms "actual" and "necessary." *Butcher*, 108 B.R. at 636–637. The next rule the court introduces is the one handed down in *In re Sinclair*, 92 B.R. 787, 788 (Bankr. S.D.Ill.1988). This holding states that the party making the motion for payment of administrative expenses has the burden of showing that the claim is in fact entitled to such priority. *Butcher*, 108 B.R. at 637. The fourth and final instruction *Butcher* gives is that within this burden of proof is the requirement that the movant show the reasonableness and necessity of the expense and also the benefit conferred on the estate. *Butcher*, 108 B.R. at 637 citing *In re Hendersonville Bowling Center, Inc.*, 65 B.R. 963, 965 (Bankr.M.D.Tenn.1986).

■ Keeping the *Butcher* mandates in mind, it is now necessary to inquire as to whether or not MHA is entitled to administrative expenses. In this proceeding, MHA has cited *In re Pearson* and *In re Multech* which support their claim of administrative expenses. Also, MHA has offered § 365 as authority for their claim. Considering these authorities together, along with the fact that debtor has not directed the Court's attention to any caselaw which discounts MHA's cited authority, this Court finds that MHA has met their burden of showing entitlement to administrative priority. This Court also finds that MHA has demonstrated the re-

quired "reasonableness," "necessity" and "benefit conferral."

The cases MHA cites, along with the remainder of the vast body of caselaw regarding administrative expenses, clearly indicate that MHA's allowance of debtor's continued residence was a definite benefit to the estate. The low monthly rent of approximately $220 allowed debtor to preserve the majority of her estate for the payment of other debts. Had MHA objected to the lease assumption in debtor's plan, it is most likely debtor would have had to find another residence in which to live during the handling of her case. In today's housing economy, the debtor's chance of finding a dwelling with a rent comparable to the MHA amount would have been slim.

MHA's claim of $481.52 could hardly be regarded as unreasonable, even if debtor's funds available for distribution are minimal. This Court finds that a claim of $481.52 for two-and-a-half months (July 1–September 19) of residence and utilities is more than a reasonable claim. MHA could have included rents due under the remainder of the lease in their damages amount. MHA's cited caselaw gives them authority to not only ask for this money, but to be awarded it also. *Multech*, 47 B.R. at 752.

Allowing the debtor to remain in the MHA residence also satisfies the "necessity" requirement of *Butcher*. It is a necessary requirement that debtor have a place to live, not only while her bankruptcy case is pending, but at all times. Had MHA obtained relief from the automatic stay and enforced their general sessions judgment for possession, it is quite possible debtor would have been unable to find another apartment that she could afford. Therefore, remaining in the MHA apartment was quite necessary to preservation of debtor's estate.

Additionally, under either the *United* or *White Motor* holding, MHA is entitled to payment of administrative expenses. Debtor induced their performance by assuming the lease and MHA allowed debtor to stay and to pay off past arrearages over a forty-eight month period. The *Jartran* test of consideration given post-petition was therefore satisfied. Also, by asking only for the contractual rate due under the lease for utilities and rent for only the period debtor resided in the MHA apartment, the *United* limitation of actual value of benefit conferred is satisfied. As a result of these conclusions, MHA's motion asking for payment of their post-petition claim as administrative expenses is granted.

Because debtor has moved out of the MHA premises, MHA's motion for relief from the automatic stay is a moot issue. Consequently, it is unnecessary for the Court to issue a decision on this motion.

### III. Order

It is therefore **ORDERED** that Millington Housing Authority's motion for allowance and payment of administrative expenses in the amount of $481.52 is granted.

**IT IS SO ORDERED.**